# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEFFERSON DOMINGUEZ-LARA, *et al.*, | Case No. 2:25-cv-01553-RFB-EJY |
| Petitioners-Plaintiffs, | **ORDER** |
| v. | |
| KRISTI NOEM, *et al.*, | |
| Respondents-Defendants. | |

Pending before the Court is named Petitioner-Plaintiffs' (hereinafter Petitioners) (ECF No. 23) Amended Motion for Preliminary Injunction. For the following reasons, the Court grants the Motion as to the requested relief on behalf of Petitioners individually, and defers ruling on the Motion as to the requested class wide relief.

## I. BACKGROUND

Petitioner Jefferson Dominguez-Lara is currently detained at the Nevada Southern Detention Center (NSDC). On July 21, 2025, an Immigration Judge (IJ) granted him a $3,000 bond, which Department of Homeland Security (DHS) automatically and unilaterally stayed pursuant to 8 C.F.R. § 1003.18(i)(2).

Petitioner Jose Ramirez is currently detained at the Nevada Southern Detention Center (NSDC). On July 16, 2025, an IJ granted him a $3,000 bond, which the DHS automatically and unilaterally stayed pursuant to 8 C.F.R. § 1003.18(i)(2).

Respondents contend that while "the current operative mechanism of Petitioners' detention is an automatic stay of release on bond for a maximum of 90 days under 8 C.F.R. § 1003.19(i)(2)," their confinement "is statutorily authorized by 8 U.S.C. § 1225(b)(2), which requires detention

throughout their entire removal proceedings." See ECF No. 28 at 6. That argument is based on DHS' reinterpretation of 8 U.S.C. § 1225 as mandating the detention of all undocumented noncitizens in the United States pending the resolution of their removal proceedings—which can take months or years—no matter how long they have resided in the country, without consideration of whether the government has a legitimate interest in detaining an individual because they are either a flight risk, dangerous, or a threat to national security. This policy, which DHS, in conjunction with the Department of Justice, adopted on July 8, 2025,[1] subjects *millions* of undocumented residents to prolonged detention without the opportunity for a bond hearing, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[2] On September 5, 2025, the Bureau of Immigration Appeals (BIA) adopted the policy in a precedential decision. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

The overwhelming majority of district courts across the country, including this Court, that have considered DHS and the BIA's new statutory interpretation have found it incorrect and unlawful. See Maldonado Vazquez v. Feeley, 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (finding the statutory text and "canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance" demonstrate the government's new reading of § 1225(b)(2) is likely unlawful); see also Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Similarly, in granting bond to Petitioners, the IJs rejected DHS' argument that § 1225(b)(2) applies to Petitioners, and found their prolonged detention was not warranted under § 1226(a),

---

[1] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[2] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

because they are neither a flight risk nor danger to the community. Within one day of the IJs' orders, DHS invoked an automatic stay pursuant to 8 C.F.R. § 1003.18(i)(2). DHS then presumably preserved the stay for up to ninety days by filing an appeal of the IJ's decisions, including a certification from a high level legal official that the appeal was warranted based on the evidentiary record and law. See 8 C.F.R. § 1003.6(c)(4). However, Respondents have not provided any evidence that they preserved the stay by following the requirements under 8 C.F.R. § 1003.6(c)(4). And in any case, the 90-day stay has now lapsed for Mr. Dominguez-Lara as of October 19, 2025, and for Mr. Ramirez as of October 14, 2025.

In a related habeas case, this Court already considered the legality of 8 C.F.R. § 1003.18(i)(2) (the "automatic stay"), which vests authority in a DHS official to unilaterally and automatically stay an IJ's order that a noncitizen's continued detention is not warranted. This Court held that the automatic stay's lack of procedural safeguards to prevent the federal government from arbitrarily detaining noncitizens for up to ninety days renders it unconstitutional under the Due Process Clause of the Fifth Amendment, both facially and as applied to noncitizens like Petitioners. See Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *8-13 (D. Nev. Sept. 5, 2025); Vazquez, 2025 WL 2676082, at *21. Beyond the fact that the Court finds the automatic stay is unconstitutional, in this case, if Petitioners continue to be detained pending a resolution of DHS' appeal, it appears Respondents have not respected the procedural protection within the regulation that limits the period of unchecked detention to no more than 90 days.

**II.     PROCEDURAL HISTORY**

The Court recites the procedural history relevant to the instant Motion. On August 21, 2025, Petitioners commenced this action by filing their Class Action Complaint and Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, the Administrative Procedure Act (APA), and the Immigration and Nationality Act (INA). ECF No. 1. Petitioners concurrently filed a Motion for Preliminary Injunction, seeking both individual and class wide relief, and a Motion to Certify Class. ECF Nos. 3-4. The Court ordered service and briefing, and the parties stipulated to a briefing schedule, which was granted. ECF Nos. 5, 9, 11. This case was initially assigned to the Honorable

1  Judge Jennifer A. Dorsey, but on September 22, 2025, was transferred to the undersigned Judge
2  as related to another pending putative class actions, Case Number 2:25-cv-01542-RFB-EJY. ECF
3  No. 10. After Respondents filed their oppositions to the Motion for Preliminary Injunction and for
4  Class Certification, and their Motion to Dismiss. ECF Nos. 12, 17, 18. Petitioners filed an
5  Amended Complaint, Amended Motion for Class Certification, and the instant Amended Motion
6  for Preliminary Injunction. ECF Nos. 21-23.

7  On October 17, 2025, the Court held a status conference in this matter and other related
8  matters pending before it. ECF No 27. The Court ordered pre-certification discovery and stayed
9  the deadlines to respond to the Amended Complaint and Motion for Class Certification. Id. The
10 Court further set a deadline for Respondents' opposition to the Amended Motion for Preliminary
11 Injunction as to the individual relief on October 20, 2025, and an October 31, 2025 deadline as to
12 the class wide relief. Id. On October 20, 2025, Respondents filed their Opposition. ECF No. 28.
13 The Court's Order regarding individual preliminary relief follows.

### III.   LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious

questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

### B. § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003).

### IV. DISCUSSION

As a threshold matter, the Court finds it appropriate to decide this Motion without having held an evidentiary hearing or heard oral argument. In the Ninth Circuit, whether to hold a hearing on a preliminary injunction is a matter of the district court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter.").

Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds

there are no disputes of fact material to the request for preliminary relief that would necessitate an evidentiary hearing. Rather, the opposition by Respondents raises solely legal issues, and this Court has heard oral arguments on these issues from Respondents' counsel in multiple related habeas matters. See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025). For those reasons and considering the urgent need for injunctive relief where Petitioners' liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is warranted in this case.

### A. Jurisdiction

As an initial matter, the Court has habeas jurisdiction to review Petitioners' challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply, as discussed and held by the Court in granting relief to similarly situated petitioners, which the Court fully incorporates by reference. See Vazquez, 2025 WL 2676082, at *7-9; Roman, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211, at *5. Further, 8 U.S.C. 1226(e) does not apply to preclude this Court's review, because the Ninth Circuit has held that while the Attorney General's "discretionary judgment" is not subject to review, claims that the discretionary process itself is legally and constitutionally flawed are "cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." Gutierrez-Chavez v. INS, 298 F.3d 825, 829 (9th Cir. 2002).

### B. Administrative Exhaustion

The Court fully incorporates by reference its prior finding for similar cases that administrative exhaustion is excused as futile. See Herrera, 2025 WL2481792, at *7-8; Vazquez, 2025 WL 2676082, at *9-10.

### C. Preliminary Injunction

The Court now turns to the analysis under the Winter factors.

### i. *Likelihood of Success or Serious Questions*

First, the Court finds Petitioners have satisfied the most important Winter factor: they are likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to them, and therefore their detention without bond violates the INA and (2) Respondents' continued detention of Petitioners pursuant to the automatic stay of the IJ's bond release order under 8 C.F.R. §1003.19(i)(2) violates Petitioners' procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

The Court fully incorporates by reference its reasoning and holding regarding the statutory question and automatic stay from Vazquez. WL 2676082, at *11-22. Again, the Court rejects Respondents', and the BIA's, statutory interpretation, and finds Petitioners are detained under § 1226(a). Additionally, the Court finds the 90-day detention period permitted by the automatic stay has lapsed by its own terms, which provides a separate and independent basis to order their immediate release.

### ii. *Irreparable Harm*

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. Alliance for the Wild Rockies, 632 F.3d at 1131. Petitioners clearly face irreparable harm in the absence of judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that detention via the automatic stay is unconstitutional—such that Petitioners would continue to be deprived of their physical liberty in violation of procedural and substantive due process in the absence of intervention—that Petitioners have carried their burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In

the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### iii. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The harm to the government here is minimal. The Court is simply ordering a recognition of the IJs' bond hearing determinations—a bond hearing process which is contemplated by the regulations and is a part of the government's normal operations in any event. Moreover, it is DHS' new reading of the INA which upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention that is creating the significant fiscal and administrative burden on the government. However, this is a burden of its own choosing.

In contrast, the hardships faced by Petitioners and the public interest in issuing an injunction weigh strongly in their favor. Because the Court has found it is likely that Respondents are unlawfully detaining Petitioners under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioners. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioners have raised only "serious questions going to the merits" of their challenge

to their detention under the INA and Constitution, Petitioners are entitled to a preliminary injunction.

### D. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioners release pursuant to the IJs orders would be costly, so the Court declines to set bond beyond the amount imposed by the IJs.

### V. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioners' Amended Motion for Preliminary Injunction (ECF No. 23) is **GRANTED in part** and **DEFERRED in part**. Pending a resolution of this matter on the merits, Respondents are:

(1) **ORDERED** to release Petitioners from custody by **October 25, 2025 at 5:00 p.m.**. Petitioners shall be subject to the bond and other conditions imposed by the IJ.

(2) **ENJOINED** from continuing to detain Petitioners pursuant to the C.F.R. § 1003.19(i)(2) automatic stay or otherwise denying them release on bond on the basis that they are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

///
///
///

1   **IT IS FURTHER ORDERED** that Petitioners shall have until **November 3, 2025** to satisfy the bond conditions. If they do not satisfy them, they will be subject to rearrest and detention.

**DATED:** October 24, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**